1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  KELSEY C. DAVIDSON (CABN 322323)
   Assistant United States Attorney
5
         450 Golden Gate Avenue, Box 36055
6        San Francisco, California 94102-3495
         Telephone: (415) 436-6959
7        Fax: (415) 436-7027
8        kelsey.davidson@usdoj.gov

9  Attorneys for United States of America

10                      UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                            SAN FRANCISCO DIVISION

13

14 | UNITED STATES OF AMERICA,           )  **CASE NO. 3:22-CR-00401-JD**
                                         )
15 |          Plaintiff,                 )  **UNITED STATES' SENTENCING**
                                         )  **MEMORANDUM**
   |   v.                                )
16 |                                     )  Court:          Hon. James Donato
   | JACE WONG,                          )  Hearing Date:   September 25, 2023
17 |   a/k/a Robyn Wong                  )  Hearing Time:   10:30 a.m.
                                         )
18 |          Defendant.                 )

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................1

**OFFENSE CONDUCT** .........................................................................................................2

**PROCEDURAL HISTORY** ..................................................................................................6

**SENTENCING GUIDELINES CALCULATIONS**.............................................................6

**APPLICABLE LAW** .............................................................................................................9

**RECOMMENDED SENTENCE AND 3553(A) FACTORS**................................................9

**RESTITUTION**...................................................................................................................13

**CONCLUSION** ...................................................................................................................13

# TABLE OF AUTHORITIES

### CASES

*Paroline v. United States*, 572 U.S. 434, 441 (2014 .................................................... 9, 10, 13

*United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) .................................................. 8

*United States v. Ferber*, 458 U.S. 747, 758 (1982). ............................................................ 12

*United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) ............................................ 13

### STATUTES

18 U.S.C. § 2259 .................................................................................................................. 13

18 U.S.C. § 3553(a) ................................................................................................................ 9

Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018
    (the AVAA) .................................................................................................................. 13

Mandatory Restitution for Sexual Exploitation of Children Act of 1994 .......................... 13

## I. INTRODUCTION

Defendant Jace Wong is a 29-year-old man who, until his arrest on April 14, 2021, worked at daycares in order to prey on the young children in his care. The defendant took numerous photos and videos of minors who were approximately four and five-years-old, including videos that included hands-on contact. He then distributed these photos and videos to countless people through Kik, an online messaging platform, and posted some on the internet. The defendant also possessed and distributed numerous other photos and videos of child sexual abuse material (CSAM). Based on the defendant's pattern of sexual abuse of minors, the government requests that the Court accept the jointly agreed upon sentence of 300 months imprisonment in the Rule 11(c)(1)(C) plea agreement. The government also requests that the Court impose 15 years of supervised release following his custodial term and restitution.

## II. OFFENSE CONDUCT

### A. Initial Investigation and Mission Neighborhood Centers

The investigation into the defendant began as part of a broader investigation into groups of individuals using Kik Messenger to send CSAM. An undercover officer (UC) joined a private Kik chat group named "Younger love [heart emoji] [heart emoji]" (Younger Love) that was being used to send CSAM. The defendant—under the username "anontransboi"—was part of the group, and on April 19, 2021, the defendant sent the group a series of photos and videos of prepubescent females, all approximately four to six years old. He first sent a 14-second-long video of a prepubescent female in a bathroom with her vagina exposed. The minor pulled up her underwear and then appeared to spot the person filming. The defendant then sent a 12-second video of a prepubescent female standing in a bathroom and wiping herself with her vagina exposed. The defendant also sent two images of a prepubescent female with her vagina exposed and another 12-second video of a prepubescent female standing in a bathroom with her vagina exposed and pulling up her underwear.

On April 11, 2021, the UC began a private conversation with the defendant. The defendant admitted that he took the videos in the bathroom. The following is an excerpt of their conversation:

UC:  Hey

UC:  We both in younger lover

Wong:  Hi

| | | |
|---|---|---|
| 1 | Wong: | Is that your kid in your pic? |
| 2 | UC: | Yes |
| 3 | UC: | R those ur vids ur sending? |
| 4 | Wong: | yea |
| 5 | Wong: | The ones in the bathroom at least |

6  The conversation later continued on April 13, 2021, during which the UC tried to figure out where the defendant was taking the videos, and the defendant advised that he "almost got caught last time" so there were "[n]o new vids or pics from today" because he has "[g]otta be more cautious now." The defendant then told the UC he "[w]ould love to grope one of the girls through their clothes, then slip my hand under and play with their little slit, then slip my finger inside and taste my fingers." The following is an excerpt of this conversation:

| | | |
|---|---|---|
| 12 | Wong: | Are you looking to trade content? |
| 13 | UC: | How u get those vids? |
| 14 | Wong: | I took them |
| 15 | Wong: | have any vids of your daughter? |
| 16 | Wong: | Old or current |
| 17 | UC: | I'm impressed |
| 18 | UC: | I'm setting up some spycams |
| 19 | UC: | We started at 7 but never thot to film it back then |
| 20 | Wong: | You could always play with her in her sleep |
| 21 | UC: | I'll take suggestion since ur the expert [laughing emoji] [laughing emoji] |
| 22 | Wong: | Lol almost got caught last time |
| 23 | UC: | Lol where is that at? |
| 24 | Wong: | No new vids or pics from today tho. Gotta be more cautious now |
| 25 | Wong: | [shhh emoji] [winking tongue out emoji] |
| 26 | UC: | Hahaha ya good call babe |
| 27 | UC: | U must not b from USA I never seen bathroom like that before lol |
| 28 | Wong: | Lol |

UNITED STATES' SENTENCING MEMO         2
3:22-CR-00401-JD

| | | |
|---|---|---|
| Wong: | Where u from? |
| UC: | Wisconsin |
| UC: | Hbu |
| Wong: | OR |
| Wong: | Not a public bathroom |
| Wong: | A kids bathroom |
| UC: | Let me guess... ymca? |
| Wong: | No, but similar in a sense |
| Wong: | Would love to grope one of the girls through their clothes, then slip my hand under and play with their little slit, then slip my finger inside and taste my fingers |

The defendant then sent the UC a 36-second-long video of a prepubescent female, approximately four to six years old, in a bathroom with her pants pulled down. The minor reaches for toilet paper and wipes herself. The minor's vagina is exposed in the video. After sending this video, the defendant said, "3 of the girls have such delectable little mounds."

After this conversation, the FBI determined that the defendant worked at Mission Neighborhood Centers daycare in San Francisco. The defendant was arrested shortly thereafter. During an interview with law enforcement, the defendant admitted that he sent and received multiple images containing CSAM and that he recorded videos of the minors in his care at Mission Neighborhood Centers.

Overall, the defendant produced child pornography of four different minor victims from Mission Neighborhood Centers.[1] In some cases, the defendant created screenshots from the original videos/photos that zoomed in on the minors' genitalia. The defendant also distributed the photos and videos he took. In a conversation with D.W. in April 2021, the defendant and D.W. discussed trading CSAM. The defendant sent D.W. a photo of one of the minor victims from Mission Neighborhood Centers, and D.W. sent him a photo containing CSAM material in exchange. Additionally, the defendant's Kik account was reviewed, and it was determined that it had 28 images and 98 videos containing CSAM. Of the 28 CSAM images,

---

[1] The defendant also took images and videos of other three minor victims that do not meet the definition of child pornography. There were photos/videos of three other minors (dates of birth in February, May, and July 2016) in the bathroom at Mission Neighborhood Centers.

UNITED STATES' SENTENCING MEMO            3
3:22-CR-00401-JD

19 were produced at Mission Neighborhood Centers. The defendant distributed 17 of the 19 photos to three individuals in private chats and sent two of the photos to a group containing 42 members. Of the 98 CSAM videos, 21 were produced at Mission Neighborhood Centers, and the defendant distributed 16 of the videos to six individual users in private chats, two of the videos to a group containing 42 members, and two of the videos to a group containing 22 members.

### B. Cape, Inc. Daycare

This is not the first time that the defendant has used his position as a childcare worker to exploit minors. Prior to working at Mission Neighborhood Centers, the defendant worked at Cape, Inc. daycare in Livermore, California, during which time the defendant also produced CSAM of two victims.[2] Under the username "Thirstyboi," the defendant posted on the internet on five different dates.

First, on December 10, 2020, the defendant posted two videos. The first video was 36-seconds, and in it, the defendant is pulling away a blanket from a minor female and exposing her buttocks. The defendant then touched the minor's vagina and attempted to insert his finger beneath her underwear. The minor moved, and the video ended. The second video was 23-seconds, and the defendant was rubbing a minor female's vagina over her underwear. He then inserted his finger beneath the minor female's underwear before she moved, and the video ended.

Second, on December 8, 2020, the defendant made the following post:

> A little boy (3) at daycare took out his penis during circle today. I was the only one that caught him and a little girl saw too, but just stared. He and his brother are in diapers and when their diapers are wet, I jerk and squeeze their shafts a little. I grazed my finger over one of their penis heads too. I just pretend I'm having trouble changing their diaper. They let me or don't care, because they naturally already stick their hands in their pants. I'd love to suck them one day. They're circumcised and their penis heads look a little botched, but id still love to play with their penises.
>
> And a little girl here asked how I pee and I didn't answer her, but if she didn't have a big mouth and if there was nobody else around, I would've showed her and let her explore my body.
>
> Another little girl was taking a long time in the bathroom, so I looked over at her stall and saw her wipe her fat little pussy and bounced back.
>
> And a girl in another class kept putting her hands in my pocket and I flinched because it

---

[2] The defendant took photos of one other minor (date of birth in May 2016) at Cape, Inc., but the photos do not meet the federal definition of child pornography.

UNITED STATES' SENTENCING MEMO            4
3:22-CR-00401-JD

> tickled, so she found it funny to keep doing it. I kept putting my hand in my pocket and she told me to take it out so she could put her hand in my pocket instead. So I pushed her hand deep into my pocket and moved her fingers to graze my clit. She smiled and thought it was funny and kept doing it. I think she liked it. [winking emoji] (I'll add vids later)
>
> The parents should stop sending their kids to school in tight pants.

Third, on November 13, 2020, the defendant posted two images of a fully clothed minor male lying down. He wrote, "The other day, this boy (awake) pulled my hand under his crotch, laying on my hand. I slowly moved my fingers and felt his little cock. He shifted again, and I moved my fingers slowly again."

Fourth, on October 20, 2020, the defendant posted a 13-second-long video of a minor female lying down as the defendant attempted to pull down her skirt. The defendant wrote:

> I was trying to lift up her skirt, but she woke up, so this is all I could do. I wish the waistband of her skirt was her pussy lips instead. I'd love to slowly finger her while she's sleeping and taste my fingers afterwards. I've fingered my wet pussy and wiped my juice/cum on the lips of sleeping girls before.

Fifth, on October 14, 2020, the defendant posted four images (of two different minor females), all of which showed the minors lying down with blankets pulled up exposing their underwear. The defendant wrote, "I'd love to drug her and her [redacted] and finger fuck one, while I lick the pussy of the other. Maybe rub my fat clit or pussy lips in their mouths."

### C.     Possession and Distribution of Additional CSAM

In addition to producing the above CSAM, the defendant also possessed other sexually explicit materials of minors. The defendant had a hidden album on his phone containing approximately 428 media files, many of which contained CSAM. This included an 8-minute-long video in which a prepubescent female was seen lying fully nude on a bed with an older adult male. The adult male was seen penetrating her vagina using multiple fingers, the minor female was seen performing oral sex on the adult male, and the adult male subsequently penetrated the minor female's vagina with his penis.

The defendant also distributed other CSAM in addition to the ones he produced. For example, the defendant distributed a 47-secong-long video on March 3, 2021, where a minor female approximately 6 to 7 years old, was forcefully held on top of an adult male's genitals and appeared to be vaginally penetrated. The minor female was heard yelling "no" and screaming "oww" throughout the video.

## III. PROCEDURAL HISTORY

On April 14, 2021, a one count Criminal Complaint was filed against the defendant, charging him with one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). On October 18, 2023 the grand jury returned a seven count Indictment against the defendant, charging him with five counts of Production or Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e), one count of Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). On April 24, 2023, the defendant pled guilty to all seven counts, and the parties signed a Rule 11(c)(1)(C) plea agreement with a jointly agreed upon sentence of 300 months. Dkt. 93. The plea agreement left open the length of supervised release, the special assessment, the restitution amount, and forfeiture. The Court accepted the guilty plea on a conditional basis and deferred a decision on whether to accept the sentencing recommendation in the plea agreement until sentencing. Dkt 95.

## IV. SENTENCING GUIDELINES CALCULATION

The government agrees with the Probation Office's calculation of the Sentencing Guidelines in the Presentence Report (PSR). PSR ¶¶ 51-112. These calculations are almost identical to those in the plea agreement. The plea agreement, however, left open the determination of whether the enhancement for repeat and dangerous sex offenders against minors under § 4B1.5(b)(1) applies. Dkt. 93 at 10. The Probation Office concluded that this applies. PSR ¶ 109. The government agrees. Specifically, the government agrees that the total offense level is 43, and the calculations are as follows:

| Count 1: Production or Attempted Production of Child Pornography of Minor 1 | |
|---|---|
| Base Offense Level – § 2G2.1(a)(1) | 32 |
| Minor under 12 years old – § 2G2.1(b)(1) | +4 |
| Defendant knowingly engaged in distribution – § 2G2.1(b)(3) | +2 |
| Minor in care of defendant – § 2G2.1(b)(5) | +2 |
| **Total Offense Level** | **40** |

| Count 2: Production or Attempted Production of Child Pornography of Minor 2 | |
|---|---|
| Base Offense Level – § 2G2.1(a)(1) | 32 |

| | |
|---|---|
| Minor under 12 years old – § 2G2.1(b)(1) | +4 |
| Defendant knowingly engaged in distribution – § 2G2.1(b)(3) | +2 |
| Minor in care of defendant – § 2G2.1(b)(5) | +2 |
| **Total Offense Level** | **40** |

| **Count 3: Production or Attempted Production of Child Pornography of Minor 3** | |
|---|---|
| Base Offense Level – § 2G2.1(a)(1) | 32 |
| Minor under 12 years old – § 2G2.1(b)(1) | +4 |
| Defendant knowingly engaged in distribution – § 2G2.1(b)(3) | +2 |
| Minor in care of defendant – § 2G2.1(b)(5) | +2 |
| Offense involved commission of sexual act or sexual conduct – § 2G2.1(b)(2)(A) | +2 |
| **Total Offense Level** | **42** |

| **Count 4: Production or Attempted Production of Child Pornography of Minor 4** | |
|---|---|
| Base Offense Level – § 2G2.1(a)(1) | 32 |
| Minor under 12 years old – § 2G2.1(b)(1) | +4 |
| Defendant knowingly engaged in distribution – § 2G2.1(b)(3) | +2 |
| Minor in care of defendant – § 2G2.1(b)(5) | +2 |
| Offense involved commission of sexual act or sexual conduct – § 2G2.1(b)(2)(A) | +2 |
| **Total Offense Level** | **42** |

| **Count 5: Production or Attempted Production of Child Pornography of Minor 3 or Minor 4** | |
|---|---|
| Base Offense Level – § 2G2.1(a)(1) | 32 |
| Minor under 12 years old – § 2G2.1(b)(1) | +4 |
| Defendant knowingly engaged in distribution – § 2G2.1(b)(3) | +2 |
| Minor in care of defendant – § 2G2.1(b)(5) | +2 |
| Offense involved commission of sexual act or sexual conduct – § 2G2.1(b)(2)(A) | +2 |
| **Total Offense Level** | **42** |

| Counts 6 /7: Possession and Distribution of Child Pornography | |
|---|---|
| Base Offense Level – § 2G2.2(a)(2) | 22 |
| Minor under 12 years old – § 2G2.2(b)(2) | +2 |
| Distribution for valuable consideration – § 2G2.2(b)(3)(B) | +5 |
| Offense involved sadistic of masochistic conduct or other depictions of violence, or the sexual abuse or exploitation of an infant or toddler – § 2G2.2(b)(4) | +4 |
| Pattern of activity of sexual exploitation – § 2G2.2(b)(5) | +5 |
| Use of computer – § 2G2.2(b)(6) | +2 |
| Number of images exceeds 600 – § 2G2.2(b)(7)(D) | +5 |
| **Total Offense Level** | **45** |

Pursuant to § 3D1.2, Counts One through Five are not grouped, and Count Six is grouped with Count Seven. The highest offense level is for Counts Six and Seven. The offense level for Counts One and Two are five to eight levels less serious, so are each worth one-half unit for a total of one unit. The offense level for Counts Three, Four, and Five are one to four levels less serious, so are each worth one additional unit for a total of three units. Thus, four additional units are added to the total offense level.

| Chapters 3 through 5 Calculations | |
|---|---|
| Greater of the Adjusted Offense Level | 45 |
| Multiple counts adjustment – § 3D1.4 | +4 |
| Repeat and dangerous sex offender against minors – § 4B1.5 | +5 |
| Acceptance of responsibility – § 3E1.1 | -3 |
| Adjusted Offense Level | 51 |
| **Total Offense Level** (§ 5, part A, application note 2) | **43** |

The government also agrees that the defendant is in Criminal History Category I, which yields a Guidelines range of life in prison. However, since the statutory maximum is less than the Guidelines range, the Guidelines range becomes 360 months for Counts One through Five and 240 months for Counts Six and Seven.

## V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

## VI. RECOMMENDED SENTENCE AND 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court accept the sentence of 300 months of imprisonment as proposed in the plea agreement and also impose fifteen years of supervised release. The defendant's conduct is among the worst imaginable. He made the choice to work at daycares so that he could take advantage of the young children in his care. At least six children were exploited while under the defendant's care, and that does not include other minors who are in the other CSAM material that the defendant possessed and distributed. Given the abhorrent nature and circumstances of the offense, the history of the defendant, and the need to protect vulnerable children from further sexual exploitation and deter other pedophiles, the sentencing objectives set forth by Congress are only accomplished through a substantial prison sentence. However, given the defendant's characteristics, the government believes a small downward variance (equivalent to three Guidelines levels) from the applicable Guidelines range is

appropriate. At offense level 43, the defendant's Guidelines range is life in prison. The government believes that a sentence of 300 months is sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553.

### A.  The Nature and Circumstances of the Offense

The defendant chose to work at daycares, with children under five-years-old, where he produced countless photos and videos containing child pornography. He then widely distributed these photos and videos across the internet, sometimes in exchange for more child pornography. And he did so all for his own sexual gratification—the defendant's commentary leaves little doubt as to why he took them.

The defendant was s systemic predator of toddler and preschool aged children. Not only did he victimize the children by touching them and taking photos and videos, but the defendant also compounded the harm by distributing the photos and videos on the internet. The Supreme Court has stated that child pornography crimes are "compounded by the distribution of images" because "the wrongs inflicted upon [the victim] were in effect repeated; for [the victim] knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Paroline v. United States*, 572 U.S. 434, 441 (2014). Similarly, here, the defendant posted the photos and videos he took on the internet and sent them to countless people via Kik. The harm the victims and their families have suffered will be compounded in the future by the knowledge that these images and videos may be shared broadly on the internet. Indeed, one mother wrote that she has "great concern that the pornographic media technology will fall into the wrong hands and continue to be distributed forever."[3] The unfortunate reality is that these photos and videos will likely remain on the internet, and the defendant's victims will have to live with this knowledge.

The fact that the defendant was in a position of trust contributes to the seriousness of the offense. The defendant was supposed to be someone caring for the victims. Instead, he abused this trust and took advantage of young children.

Additionally, there are likely more children beyond Minors 1 through 4 who have suffered sexual abuse at the defendant's hands. For example, the defendant bragged online that he used changing toddler's

---

[3] This victim impact statement was provided after the final PSR was disclosed. A copy will be provided to probation, the defense, and to the Court.

diapers as an excuse to sexually abuse them. The defendant admitted that when he changes the diapers of a three-year old and his brother, he "jerk[s] and squeeze[s] their shafts a little" and has "grazed [his] finger over one of their penis heads." PSR at ¶ 33(b). Later in that same post, the defendant admitted that he tricked a young female minor into sexually touching him by "push[ing] her hand deep into [his] pocket and mov[ing] her finders to graze [his] clit." *Id.* In another post, the defendant confessed that a minor male was lying on his hand, and the defendant "moved [his] fingers and felt [the minor victim's] little cock." PSR at ¶ 33(c). These are just a couple examples that the defendant happened to post about online. Based on his conduct, there are likely many more situations like this where the defendant took advantage of very young children for his own sexual gratification. A sentence of 300 months appropriately reflects the nature and circumstances of the offense.

### B.    History and Characteristics of the Defendant

Although the defendant does not have a criminal record, the facts and circumstances surrounding this case suggest that the defendant was abusing minors in his care for years. As mentioned above, the defendant began this conduct while at Cape, Inc. from August 2019 to December 2020, and continued this while at Mission Neighborhoods Center from March 2021 to April 2021.

The government also acknowledges, however, that the defendant suffers from Triple X syndrome, which can, on occasion, create serious behavioral problems. As outlined in the PSR, one doctor concluded that the defendant's conduct may, in part, be attributed to his Triple X syndrome. PSR at ¶ 143. The introduction of testosterone during his gender transition exacerbated the effects of his Triple X syndrome and was "a recipe for disaster." *Id.* Additionally, the defendant reported that he was emotionally and physically abused as a child and that he suffered sexual assaults as an adult.

Nonetheless, this should be weighed against the fact that the defendant purposefully made life choices to place himself in direct contact with minors. The PSR references a letter that says in October 2020, the defendant experienced increased sexual urges and reached out to his doctor to lower his libido. PSR at ¶ 150. Rather than quit his job, however, the defendant worked at Cape, Inc. for two more months and then got a job at a new daycare in the future.

Overall, the government believes that the defendant's characteristics warrant a downward variance from his Guidelines range. A sentence of 300 months is sufficient, but not greater than necessary, to

comply with the purposes set forth in § 3553.

**C.      Protection of the Public, Seriousness of the Offense, and Adequate Deterrence**

A sentence of 300 months is necessary to protect the public, reflect the seriousness of the offense, and provide adequate deterrence. There is a strong obligation to protect young children from abuse and deter future pedophiles. The defendant possessed, sent, received, and produced CSAM. He actively produced numerous images and videos and did so for his sexual gratification. The posts and commentary he made online demonstrate how he took advantage of the minors in his care, including by touching several of them or tricking one minor into touching him.

The Supreme Court has recognized that "the use of children as subjects of pornography materials is harmful to the physiological, emotional, and mental health of the child." *United States v. Ferber*, 458 U.S. 747, 758 (1982). Here, the defendant's conduct caused physiological, emotional, and mental harm to the victims and the victims' families. In one instance, Cape, Inc. informed a victim's parents in late 2019 that the victim was observed adding additional layers of clothes while at school.

Additionally, several victims' parents provided victim impact statements. One mother wrote that she is afraid to leave her children at school or go to social events because they "always live in fear and uncertainty about this happening to us again." PSR at ¶ 42(c). She continued, "Thanks to Mr. Wong, I suffer from anxiety attacks, fear, uncertainty, and nightmares. He or she has broken the peace in my mind." *Id.* Another parent told the Probation Office, "I'm unable to trust anyone with my daughter and I often find myself having anxiety." PSR at ¶ 43. She explained that her daughter now has "emotional outbursts at school[, . . .] gets frustrated when she is unable to do something[, . . .] is having a hard time interacting with other children[, . . . and] tends to get in verbal and physical fights with other children." PSR at ¶ 44. A third parent wrote, "I miss the smiles of my girls that I remember seeing and knowing prior to Wong's malicious abuse."[4] She explained that her daughters "have had significant behavioral difficulties with their peers and teachers" and it "feels like [the] entire family is experiencing a lifelong disease that will impact everyone in the family forever." The defendant is a sexual predator that the Court needs to protect the public from. A sentence of 300 months will protect the public, reflect the seriousness of the offense, and provide adequate deterrence.

---

[4] This victim impact statement was provided after the final PSR was disclosed. A copy will be made available to probation, the defense, and to the Court.

## VII. RESTITUTION

Restitution for victims of child pornography offenses is mandatory under 18 U.S.C. § 2259. Victims are statutorily entitled to restitution under the provisions of the Mandatory Victim Restitution Act of 1996, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (the AVAA), and the Mandatory Restitution for Sexual Exploitation of Children Act of 1994. Specifically, in child pornography trafficking cases—which is defined to include offenses under 18 U.S.C. § 2252—the Court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the defendant's crime, and then "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2); *see also Paroline*, 572 U.S. 457, 457–62 (2014). Restitution in child pornography cases serves "twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." *Paroline*, 572 U.S. at 457. To the extent there is a dispute about the correct amount of restitution, it is the government's burden to demonstrate the amount of the loss to the victim by a preponderance of the evidence. *See United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) (citing 18 U.S.C. § 3664(e)).

The government respectfully requests that the Court set a date for a hearing on restitution approximately 75 days after the current sentencing hearing. The government is in the process of obtaining the relevant information to meet its burden in seeking restitution on behalf of the Minor Victims. Pursuant to 18 U.S.C. § 3664(d)(5), undersigned counsel informs the Court that the victim's losses are not ascertainable 10 days prior to sentencing, and requests that the Court set a date for the final determination of the claims within 90 days of the sentencing hearing if the parties are unable to reach a stipulated resolution.

## VIII. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court accept the jointly recommended sentence of 300 months of imprisonment, which is a small variance from the applicable Guidelines range. The Court should also order fifteen years of supervised release and restitution, with an amount to be determined at a hearing approximately 75 days after the current sentencing date.

| | | |
|---|---|---|
| 1 | DATED: September 11, 2023 | Respectfully submitted, |
| 2 | | ISMAIL J. RAMSEY |
| 3 | | United States Attorney |

*/s/ Kelsey C. Davidson*
KELSEY C. DAVIDSON
Assistant United States Attorney

UNITED STATES' SENTENCING MEMO
3:22-CR-00401-JD     14